Daniel J. Herling (SBN 103711)
djherling@mintz.com
Samantha J. Duplantis (SBN 316012)
sjduplantis@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone:  415 432 6000
Facsimile:   415 432 6001

Attorneys for Defendant,
HARBOR FREIGHT TOOLS USA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GEORGE OLMOS AND FRANKLIN CARABALLO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>Plaintiff,<br><br>vs.<br><br>HARBOR FREIGHT TOOLS USA, INC.<br><br>Defendant. | Case No. 3:18-CV-04986-SK<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(1)**<br><br>Date:       November 5, 2018<br>Time:      9:30 a.m.<br>Room:    A<br>Judge:    Hon. Sallie Kim<br><br>Complaint Filed        August 15, 2018<br>Trial Date:                 Not set |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................1

II.  STATEMENT OF FACTS ..................................................................................................1

III.  LEGAL STANDARDS ........................................................................................................3

IV.  THE COMPLAINT MUST BE DISMISSED DUE TO LACK OF STANDING ..............4

    A.  Plaintiffs Lack Standing Under Article III................................................................4

        1.  Plaintiffs Fail to Allege the Existence of a Concrete Injury-In-Fact ...........4

        2.  Plaintiffs Cannot Pursue Injunctive Relief ...................................................8

    B.  Plaintiffs Lack Statutory Standing Under the UCL ................................................10

    C.  Plaintiffs Lack Statutory Standing under the CLRA ..............................................11

    D.  Equitable Abstention Warrants Dismissal of the Complaint ..................................11

V.  CONCLUSION....................................................................................................................13

i

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(1); Case No. 3:18-CV-04986-SK

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500 (2006)......................................................................................................3

*Barnes v. Campbell Soup Co.*,
   No. C 12-05185 JSW, 2013 U.S. Dist. LEXIS 118225 (N.D. Cal. July 25, 2013) ................12

*Bates v. UPS*,
   511 F.3d 974 (9th Cir. 2007) ........................................................................................8

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ................................................................................6, 7, 11

*Briehl v. Gen. Motors Corp.*,
   172 F.3d 623 (8th Cir. 1999) ........................................................................................5

*Buckland v. Threshold Enters., Ltd.*,
   155 Cal. App. 4th 798 (2007) ................................................................................10, 11

*Cattie v. Wal-Mart Stores, Inc.*,
   504 F. Supp. 2d 939 (S.D. Cal. 2007)..........................................................................4

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   433 F.3d 181 (2d Cir. 2005)........................................................................................4

*Cheng v. BMW of N. Am., LLC*,
   No. CV 12-09262 GAF, 2013 U.S. Dist. LEXIS 107580 (C.D. Cal. July 26, 2013) ................8

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)......................................................................................................8

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)....................................................................................................8

*Contreras v. Toyota Motor Sales USA, Inc.*,
   No. C 09-06024 JSW, 2010 U.S. Dist. LEXIS 60479 (N.D. Cal. June 18, 2010)..................7

*Cortez v. Global Ground Support, LLC*,
   No. 09-4138 SC, 2009 U.S. Dist. LEXIS 110268 (N.D. Ca. Nov. 25, 2009).........................12

*Desert Healthcare Dist. v. PacifiCare FHP, Inc.*
   94 Cal. App. 4th 781 (2001) ........................................................................................12

*Farmers Ins. Exch. v. Superior Court*,
   2 Cal. 4th 377 (1992) ..................................................................................................12

*Figy v. Amy's Kitchen, Inc.*,
　37 F. Supp. 3d 1109 (N.D. Cal. 2014) ..................................................................................12

*Ford Motor Co. v. Rice*,
　726 So. 2d 626 (Ala. 1998) ....................................................................................................5

*Frank v. DaimlerChrysler Corp.*,
　292 A.D.2d 118 (N.Y. Sup. Ct. 2002) ....................................................................................5

*Green v. GMC*,
　No. A-2831-01T5, 2003 N.J. Super., Unpub. LEXIS 13
　(N.J. Super. Ct. July 10, 2003) ...............................................................................................5

*Haddix v. General Mills, Inc.*,
　No. 2:15-cv-02625-MCE-AC, 2016 U.S. Dist. LEXIS 65108
　(E.D. Cal. May 17, 2016) .......................................................................................................8

*Hamilton v. General Mills, Inc.*,
　No. 6:16-cv-382-MC, 2016 U.S. Dist. LEXIS 97812
　(D. Or. July 27, 2016) ............................................................................................................9

*Havens Realty Corp. v. Coleman*,
　455 U.S. 363, 372 (1982) .......................................................................................................4

*In re Air Bag Prods. Liability Litig.*,
　7 F. Supp. 2d 792, 806 (E.D. La. 1998) .................................................................................5

*In re Gen. Motors Type III Door Latch Litig.*,
　No. 98 C 5836, 2001 U.S. Dist. LEXIS 969 (N.D. Ill. Jan. 31, 2001) ...................................5

*In re HP Inkjet Printer Litigation*,
　No. C 05-3580 JF, 2006 U.S. Dist. LEXIS 12848 (N.D. Cal. Mar. 7, 2006) ......................5, 6

*In re Toyota Motor Corp. Hybrid Brake Mktg.*,
　915 F. Supp. 2d 1151 (C.D. Cal. 2013) ...............................................................................5, 7

*Int'l Union of Operating Eng'rs v. Cnty. of Plumas*,
　559 F.3d 1041 (9th Cir. 2009) ................................................................................................3

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
　511 U.S. 375 (1994) ...............................................................................................................3

*Lee v. Gen. Motors Corp.*,
　950 F. Supp. 170 (S.D. Miss. 1996) .......................................................................................5

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) ...............................................................................................................4

*Martin v. Ford Motor Co.*,
  914 F. Supp. 1449 (S.D. Tex. 1996) ..........................................................................5

*McCarthy v. United States*,
  850 F.2d 558 (9th Cir. 1988) ...................................................................................3

*Meyer v. Sprint Spectrum, L.P.*,
  45 Cal. 4th 634 (2009) ..........................................................................................11

*O'Neil v. Simplicity, Inc.*,
  553 F. Supp. 2d 1110 (D. Minn. 2008) .....................................................................5

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ..............................................................................................8

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ..........................................................................................4

*St. Clair v. City of Chicago*,
  880 F.2d 199 (9th Cir. 1989) ...................................................................................3

*Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*,
  594 F.2d 730 (9th Cir. 1979) ...................................................................................3

*Tosh Surryhne v. Abbott Labs, Inc.*,
  No. CIV S-10-2603 KJM-EFB, 2011 U.S. Dist. LEXIS 110107
  (E.D. Cal Sept. 26, 2011) ........................................................................................8

*Trentacosta v. Frontier Pac. Aircraft Ind., Inc.*,
  813 F.2d 1553 (9th Cir. 1987) .................................................................................3

*Van Lengen v. Gen. Mills, Inc.*,
  185 F. Supp. 3d 1213 (E.D. Cal. May 4, 2016) ......................................................8, 9

*Vavak v. Abbott Labs., Inc.*,
  No. SACV 10-1995 JVS (RZx), 2011 U.S. Dist. LEXIS 111408
  (C.D. Cal. June, 17, 2011) ......................................................................................8

*Walker v. Geico Gen. Ins. Co.*,
  558 F.3d 1025 (9th Cir. 2009) ...............................................................................10

*Warth v. Seldin*,
  422 U.S. 490 (1975) ..............................................................................................4

*Weaver v. Chrysler Corp.*,
  172 F.R.D. 96 (S.D.N.Y. 1997) ................................................................................5

*Whitson v. Bumbo*,
  No. C 07-05597 MHP, 2009 U.S. Dist. LEXIS 32282 (N.D. Cal. Apr. 15, 2009) ............5, 6, 7

iv

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(1); Case No.  3:18-CV-04986-SK

*Winzler v. Toyota Motor Sales U.S.A. Inc.*
  681 F.3d 1208 (10th Cir. 2012) ..................................................................................9

*Yost v. Gen. Motors Corp.*,
  651 F. Supp. 656 (D.N.J. 1986) ..................................................................................5

*Ziegelmann v. DaimlerChrysler Corp.*,
  649 N.W.2d 556 (N.D. 2002) .....................................................................................5

**Statutes**

Cal. Bus. & Prof. Code §§ 17200, *et seq.*(Unfair Completition Law) ................................ *passim*

Cal. Bus. & Prof. Code §§ 17200-17210 ......................................................................1, 2

Cal. Bus. & Prof. Code § 17204 ......................................................................................10

Cal. Civ. Code § 1780 .......................................................................................................11

Cal. Civ. Code § 1782(a) ..............................................................................................2, 10

Cal. Civ. Code §§ 1750 *et seq.*
  (California's Consumer Legal Remedies Act ("CLRA")) ................................. *passim*

Cal. Civ. Code § 1782(c) (1)-(2) ......................................................................................10

Cal. Civ. Code § 1782(c)(3) .............................................................................................10

15 U.S.C. §§ 2301 *et seq.* (Magnuson-Moss Warranty Act ("MMWA")) ....................................2

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ......................................................................................................3

Fed. R. Civ. P. 12(h)(3) ......................................................................................................3

U.S. Const., art. III ......................................................................................................1, 10

*Business & Professions Code Section 17200 Practice,* W. L. Stern
  (The Rutter Group 2018), § 5:84 ..............................................................................11

v

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS CLASS ACTION
COMPLAINT PURSUANT TO RULE 12(b)(1); Case No.  3:18-CV-04986-SK

I.      **INTRODUCTION**

Upon discovering and investigating a potential safety hazard in certain Harbor Freight chainsaws, Defendant Harbor Freight Tools USA, Inc. ("Harbor Freight" or "Defendant") implemented a voluntary recall in cooperation with the United States Consumer Product Safety Commission ("CPSC") to remove the chainsaws from the market and provide free replacements to consumers. Plaintiffs George Olmos and Franklin Caraballo ("Plaintiffs") allegedly purchased chainsaws subject to the recall that did not malfunction. Plaintiffs, upon learning of the recall, did not seek the free replacement offered as part of the recall. Instead, Plaintiffs filed this putative class action against Harbor Freight to obtain a windfall recovery despite suffering no legally cognizable injury. The factual allegations in Plaintiffs' Complaint, which reveal no injury to Plaintiffs, fail to establish standing under Article III of the United States Constitution, the Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750 *et seq.*; and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210. The deficiencies in the Complaint are fatal to all causes of action and Plaintiffs' request for injunctive relief because the Court lacks subject-matter jurisdiction.

II.     **STATEMENT OF FACTS**

Harbor Freight voluntarily reported to the CPSC that an investigation had revealed that, under certain circumstances, the internal switch in certain chainsaws could become fused in the "on" position during use, requiring unplugging of the unit. *See* Cugini Decl. ¶ 2. As part of its voluntary reporting, Harbor Freight chose to participate in the CPSC's Fast Track Recall Program in order to quickly and efficiently remove potentially hazardous products from the market. *Id.* On or about May 14, 2018, the CPSC approved Harbor Freight's Corrective Action Plan ("CAP") to address the potential defect by recalling the products and providing free replacements. *Id.* ¶¶ 4-6. That same day, Harbor Freight announced the voluntary recall in coordination with the CPSC (the "Recall"). Compl. ¶ 13; Cugini Decl. ¶ 6 & Exh. A and B. On or about May 15, 2018, the CPSC sent Harbor Freight a "Corrective Action Plan Letter" which sought to formally memorialize the CPSC's acceptance of the CAP and state Harbor Freights obligation to: (1) issue a joint press

1

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(1); Case No.  3:18-CV-04986-SK

release with CPSC on or about 5/14/2018; (2) post a recall notice in stores on or about 5/14/2018; (3) post a recall notice on Harbor Freight's website on or about 5/14/2018, and on Facebook and Twitter on or about 5/14/2018; (4) send a recall notice to consumers on or about 5/14/2018; (5) offer a free replacement product; and (6) modify future chainsaw products. Cugini Decl. ¶ 10.

More than two months after the Recall was extensively publicized (*see* Cugini Decl. ¶¶ 6, 10, Exh. B, C, and D), Plaintiffs sent Harbor Freight a CLRA notice letter on July 27, 2018. Compl. ¶ 20. Rather than wait the requisite 30 days to receive a response from Harbor Freight as required by California Civil Code § 1782(a), Plaintiffs filed suit on August 15, 2018 asserting causes of action for (1) breach of implied warranty of merchantability; (2) fraud by omission; (3) unjust enrichment; (4) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*; (5) injunctive relief for violation of California's Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750 *et seq.*; and (6) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, in connection with the marketing and sale of Portland, One Stop Gardens, and Chicago Electric 14-inch electric chainsaws (the "Products"). Plaintiffs alleged that Harbor Freight failed to disclose the potential defect in the Products at the time of sale and that Plaintiffs would not have purchased the chainsaws if they had known of the potential for the power switch to malfunction. Compl. ¶¶ 3-4.

Unaware that Plaintiffs had no intention of following the CLRA's strict notice requirements, Harbor Freight responded to Plaintiffs' correspondence on August 17, 2018. *See* Cugini Decl. Exh. E. Because Harbor Freight had no record of Plaintiffs returning their chainsaws as part of the Recall (or contacting customer service with any concerns about the Recall), Harbor Freight invited Plaintiffs to take part in the Recall by returning their recalled chainsaws to their local Harbor Freight store for a free replacement chainsaw to avoid any risk of future malfunction. *See generally id.* Instead of returning the chainsaws or otherwise responding to Harbor Freight's letter, Plaintiffs subsequently served Harbor Freight with the previously filed Complaint in this action. By pursuing this litigation, Plaintiffs appear to have declined the free replacement offer through the process required by the CPSC, and chosen instead to waste the

Court's time with this litigation demanding relief that has already been provided to the proposed class and offered to Plaintiffs.

### III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction over civil actions. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The burden of establishing the contrary rests upon the party asserting jurisdiction. *Id.* Lack of subject matter jurisdiction may be raised at any point during the litigation through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006); *see also Int'l Union of Operating Eng'rs v. Cnty. of Plumas*, 559 F.3d 1041, 1043-44 (9th Cir. 2009).

There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial attack, and a factual attack. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A party may either make an attack on the allegations of jurisdiction contained in the nonmoving party's complaint, or may challenge the existence of subject matter jurisdiction in fact, despite the formal sufficiency of the pleadings. *Id.*

In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations." *Id.* (internal citation omitted). The plaintiff has the burden of proving that subject matter jurisdiction does exist, and must present any necessary evidence to satisfy this burden. *St. Clair v. City of Chicago*, 880 F.2d 199, 201 (9th Cir. 1989). The plaintiff cannot rest on the mere assertion that factual issues may exist. *Trentacosta v. Frontier Pac. Aircraft Ind., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) (citing *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). Furthermore, the district court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *Thornhill*, 594 F.2d at 733. If the plaintiff fails to meet his burden and the court determines that it lacks subject matter jurisdiction, the court must dismiss the action pursuant to Rule 12(h)(3).

1  IV. **THE COMPLAINT MUST BE DISMISSED DUE TO LACK OF STANDING**

2      **A.**     **Plaintiffs Lack Standing Under Article III**

Plaintiffs have the burden of establishing Article III standing to maintain an action in federal court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The "irreducible constitutional minimum" of standing requires a plaintiff to show that: (1) he has suffered a "concrete and particularized" injury-in-fact which is "actual or imminent, not conjectural or hypothetical"; (2) the injury is fairly traceable to the defendant's allegedly unlawful conduct; and (3) the injury will likely be redressed by the requested relief. *Id.* at 560-61. "The Supreme Court has held that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant[], none may seek relief on behalf of himself or any other member of the class.'" *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). Unnamed members of a class do not afford a plaintiff standing where plaintiff does not otherwise have it. *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007).

    *1. Plaintiffs Fail to Allege the Existence of a Concrete Injury-In-Fact*

In order to establish subject matter jurisdiction, the requisite injury-in-fact must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted). Plaintiffs in federal courts must show that, "as a result of the defendant's actions[, they have] suffered 'a distinct and palpable injury.'" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). A plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of [a statute's] procedural requirements may result in no harm." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016). "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549.

The overwhelming majority of jurisdictions, including California, hold that a plaintiff has not sufficiently alleged an actual injury to confer standing under Article III when a product

4

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS CLASS ACTION
COMPLAINT PURSUANT TO RULE 12(b)(1); Case No. 3:18-CV-04986-SK

purchased by the plaintiff does not manifest an alleged defect or experience a malfunction.[1] In *Whitson v. Bumbo*, No. C 07-05597 MHP, 2009 U.S. Dist. LEXIS 32282 (N.D. Cal. Apr. 15, 2009) and *In re HP Inkjet Printer Litigation*, No. C 05-3580 JF, 2006 U.S. Dist. LEXIS 12848 (N.D. Cal. Mar. 7, 2006), courts in the Northern District of California rendered instructive decisions in factually similar cases to the instant case where named plaintiffs were not affected by the alleged product defects.

In *Whitson*, the plaintiff filed a putative class action for violation of state consumer protection laws, breach of express and implied warranties, and unjust enrichment after the CPSC recalled the Bumbo baby seat due to a risk of children falling. 2009 U.S. Dist. LEXIS 32282, at *1, 4. The plaintiff did not allege "how or whether she used her Bumbo seat, nor [did] she allege that she or a child on whose behalf she ha[d] standing to sue was injured by the seat." *Id.* at *10. The court dismissed plaintiff's claims for a lack of standing because the plaintiff "fail[ed] to

---

[1] *See In re Toyota Motor Corp. Hybrid Brake Mktg.*, 915 F. Supp. 2d 1151, 1157-59 (C.D. Cal. 2013) (dismissing claims where the plaintiff presented no evidence of any injury that he suffered as a result of any problem with the braking system in his vehicle); *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627-29 (8th Cir. 1999) (collecting cases) ("Courts have been particularly vigilant in requiring allegations of injury or damages in products liability cases."); *O'Neil v. Simplicity, Inc.*, 553 F. Supp. 2d 1110, 1116 (D. Minn. 2008) (rejecting claims based on defective crib subject to a recall where the named plaintiffs did not allege that they had encountered any problems with their crib's functionality); *Ziegelmann v. DaimlerChrysler Corp.*, 649 N.W.2d 556, 559-65 (N.D. 2002) (collecting cases); *In re Gen. Motors Type III Door Latch Litig.*, No. 98 C 5836, 2001 U.S. Dist. LEXIS 969, at * 2-5 (N.D. Ill. Jan. 31, 2001) ("Plaintiffs cite no case in which an uninjured owner of a product which has never manifested its alleged defect has survived summary judgment."); *In re Air Bag Prods. Liability Litig.*, 7 F. Supp. 2d 792, 806 (E.D. La. 1998) ("[P]laintiffs' failure to demonstrate or, even allege, manifest injury or defect shatters an essential element of all their tort and implied warranty claims. On this ground alone, defendants' motion to dismiss is appropriately granted."); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99 (S.D.N.Y. 1997) ("It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own." (internal citations omitted)); *Martin v. Ford Motor Co.*, 914 F. Supp. 1449, 1455 (S.D. Tex. 1996); *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170, 171-75 (S.D. Miss. 1996); *Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 657-58 (D.N.J. 1986); *Ford Motor Co. v. Rice,* 726 So. 2d 626, 628-31 (Ala. 1998); *Green v. GMC,* No. A-2831-01T5, 2003 N.J. Super. Unpub. LEXIS 13, at *27 (N.J. Super. Ct. July 10, 2003) (unpublished opinion) ("We hesitate to rule in a fashion that would require manufacturers to become indemnitors for potential injuries that may never materialize."); *Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118, 121-28 (N.Y. Sup. Ct. 2002).

allege that her seat manifested the purported defect." *Id.* at *18.

In *In re HP Inkjet Printer Litigation.*, the plaintiffs alleged an injury caused by a printer malfunction resulting in premature ink depletion warnings and causing consumers to purchase new cartridges before the old ones actually ran out of ink. 2006 U.S. Dist. LEXIS 12848, at *7-9. The district court noted, however, that the plaintiffs "d[id] not specify whether their own printers began to malfunction or any other specific injuries." *Id.* at *8. Nor did the plaintiffs allege "anything at all about the performance of [their] HP printer or print cartridges." *Id.* As a result, the court held that plaintiffs failed to allege any actual injury. *Id.* *9.

Plaintiffs' claims, like those in *Whitson* and *In re HP Inkjet Printer Litigation*, fail on their face because Plaintiffs do not allege that they even used the chainsaws that they purchased or that they ever manifested any defect or malfunctioned in any manner. *See* Compl. ¶¶ 3-4. Accordingly, Plaintiffs do not set forth any concrete and particularized injury that they have personally suffered. The failure to allege an injury-in-fact prohibits this Court from exercising subject-matter jurisdiction.

Plaintiffs' deficient allegations are not saved by relying on a risk of future injury theory. The United States Court of Appeals for the Ninth Circuit rejected the risk of future injury argument plaintiffs sought to advance in *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009). The Ninth Circuit explained that the plaintiffs "d[id] not claim that they suffered or imminently w[ould] suffer hearing loss from their iPod use" or that "they [had even] used their iPods in a way that exposed them to the alleged risk of hearing loss." *Id.* at 960. Therefore, the court concluded that, at most, "plaintiffs plead[ed] a potential risk of hearing loss not to themselves, but to other unidentified iPod users who might *choose* to use their iPods in an unsafe manner." *Id.* The court also rejected any risk of future injury from unsafe use of the iPods as too hypothetical and conjectural in nature to satisfy the Article III requirements because the plaintiffs "d[id] not claim that they, or anyone else, ha[d] suffered or are substantially certain to suffer hearing loss from using an iPod." *Id.* at 961. Accordingly, the court held that the risk of injury the plaintiffs alleged was not concrete and particularized as to themselves, and required dismissal of the complaint for

6
MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS CLASS ACTION
COMPLAINT PURSUANT TO RULE 12(b)(1); Case No.  3:18-CV-04986-SK

1 a lack of standing.

2 Here, the Complaint acknowledges that the chainsaws have been recalled. Plaintiffs themselves are clearly aware of the Recall and offer of replacement, so there is no risk of injury to the named plaintiffs unless they *choose* to ignore the Recall and use the chainsaws in an unsafe manner by refusing the free replacement. Thus, any risk of future injury to Plaintiffs would arise from Plaintiffs' own conduct.

Plaintiffs also cannot rescue their claims by asserting an injury arising from a loss in value or that they did not receive the benefit-of-the-bargain due to receiving a chainsaw with a potential defect. The courts in *Birdsong* and *Whitson*, among others, rejected identical arguments. The *Birdsong* plaintiffs argued that the inherent risk of hearing loss due to the alleged defect in design of the iPods caused their iPods to be worth less than what they paid for them. *Id.* at 961. The court held that "the alleged loss in value does not constitute a distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk of hearing loss to other consumers who may or may not choose to use their iPods in a risky manner." *Id.*; *see also In re Toyota Motor Corp. Hybrid Brake Mktg.*, 915 F. Supp. 2d at 1157 (rejecting plaintiffs argument that "he suffered an actual injury because he would not have paid the same purchase price for his vehicle had he known of the problem with the [braking system] prior to Toyota's national recall" because his vehicle did not manifest the alleged defect). In *Whitson*, the court rejected the plaintiff's "benefit of the bargain" theory of injury because the seat she purchased did not manifest the purported defect and she did not allege that she replaced it and thereby incurred out-of-pocket expenses. *See Whitson*, 2009 U.S. Dist. LEXIS 32282, at *16-19; *see also Contreras v. Toyota Motor Sales USA, Inc.*, No. C 09-06024 JSW, 2010 U.S. Dist. LEXIS 60479, at *16-17 (N.D. Cal. June 18, 2010) (dismissing complaint for lack of standing where plaintiffs did not allege that their vehicles manifested the alleged defect or that they were forced to replace their vehicles after learning of the alleged defect or that they incurred any out-of-pocket damages).

Thus, "[m]erely stating a creative damages theory does not establish the actual injury that is required to prevail on [Plaintiffs'] product liability claims." *In re Toyota Motor Corp. Hybrid*

7

1  *Brake Mktg.*, 915 F. Supp. 2d at 1157-58. Plaintiffs' failure to set forth factual allegations
2  establishing how they used the product and any defects manifested or malfunctions experienced
3  precluded a finding that Plaintiffs' have demonstrated an injury-in-fact. Plaintiffs therefore lack
4  standing to bring a putative class action in federal court. Nothing more is required to justify
5  dismissal of Plaintiff's entire Complaint.

### 2. Plaintiffs Cannot Pursue Injunctive Relief

7  For injunctive relief to be proper under Article III, Plaintiffs must demonstrate "a
8  sufficient likelihood that [they] will again be wronged in a similar way." *Bates v. UPS*, 511 F.3d
9  974, 985 (9th Cir. 2007) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).
10 Plaintiffs must establish more than just "[p]ast exposure to illegal conduct," but also a "real and
11 immediate threat of repeated injury" going forward. *Lyons*, 461 U.S. at 102; *see also O'Shea*, 414
12 U.S. at 495-96. The threatened injury must be certainly impending. *Clapper v. Amnesty Int'l*
13 *USA*, 568 U.S. 398, 410 (2013).

14 Where, as here, injunctive relief has already been voluntarily provided prior to notice of a
15 plaintiff's claim or filing of suit, courts have found that claims for injunctive relief are moot and
16 the court lacks jurisdiction. *See, e.g.*, *Van Lengen v. Gen. Mills, Inc.*, 185 F. Supp. 3d 1213, 1219-
17 20 (E.D. Cal. May 4, 2016) (holding that the court lacked subject matter jurisdiction over claims
18 for injunctive relief after the defendant successfully identified and recalled contaminated product
19 batches); *Haddix v. General Mills, Inc.*, No. 2:15-cv-02625-MCE-AC, 2016 U.S. Dist. LEXIS
20 65108, at *15 (E.D. Cal. May 17, 2016) (same); *Cheng v. BMW of N. Am., LLC*, No. CV 12-
21 09262 GAF (SHx), 2013 U.S. Dist. LEXIS 107580, at *2 (C.D. Cal. July 26, 2013) (finding
22 claims for injunctive relief under the CLRA and UCL moot where an automobile recall resolved
23 the alleged problem); *Tosh Surryhne v. Abbott Labs, Inc.*, No. CIV S-10-2603 KJM-EFB, 2011
24 U.S. Dist. LEXIS 110107, at *10-13 (E.D. Cal Sept. 26, 2011) (finding that defendant's full offer
25 of restitution to plaintiff for the recalled products, which can be monetary or non-monetary,
26 makes the plaintiff whole and strips the court of jurisdiction); *Vavak v. Abbott Labs., Inc.*, No.
27 SACV 10-1995 JVS (RZx), 2011 U.S. Dist. LEXIS 111408, at *11-12 (C.D. Cal. June, 17, 2011)
28

(dismissing claim for injunctive relief where manufacture already recalled contaminated infant formula); *Hamilton v. General Mills, Inc.*, No. 6:16-cv-382-MC, 2016 U.S. Dist. LEXIS 97812, at *12 (D. Or. July 27, 2016) (dismissing CLRA injunctive relief claim because defendant already conducted a recall). In fact, even a ***post-suit recall*** can render claims for injunctive relief moot. *See Winzler v. Toyota Motor Sales U.S.A. Inc.* 681 F.3d 1208, 1214-15 (10th Cir. 2012) (holding that a car owner's putative class action was rendered moot because Toyota's *post-suit* recall gave plaintiff exactly what she was requesting from the court). Here, Harbor Freight's recall months before the litigation was commenced moots all claims for injunctive relief and strips the Court of subject matter jurisdiction over those claims.

In addition, the allegations in the Complaint fail to demonstrate any "real and immediate threat" of a repeated injury. Plaintiffs allege only that they would have made a different choice upon initial purchase of the chainsaws had they known there would eventually be a recall. *See* Compl. ¶¶ 3-4. This theory of damage is entirely backward-looking and offers no justification for concluding the existence of any threatened injury in the future. Nowhere have Plaintiffs alleged in the Complaint that there is any ongoing injury for which the Recall fails to provide relief. Absent any threat of repeated and certainly impending injury to Plaintiffs, they lack standing to maintain claims for injunctive relief.

Plaintiffs cannot rescue their claims by arguing that the voluntary recall was insufficient despite compliance with the applicable regulatory scheme imposed by the CPSC. In *Van Lengen*, 185 F. Supp. 3d 1213, when a voluntary recall obviated the need for injunctive relief, the court held that plaintiffs' challenge to the effectiveness of the recall did not change the ultimate mootness of the case as a result of the recall. *Id.* at 1220. When "Plaintiffs summarily stated that Plaintiffs' counsel has been contacted by consumers who consumed and were affected by gluten free Cheerios products long after the recall was instituted" that "bare assertion [wa]s not enough to carry Plaintiffs' burden of establishing subject matter jurisdiction." *Id.*

Here, Plaintiffs make similar bare allegations, but fall even shorter than did the plaintiffs in *Van Lengen* by failing to even challenge the efficacy of the Recall. Plaintiffs state summarily

that the Recall was "insufficient" and yet utterly fail to substantiate that claim, alleging only that (1) one unidentified consumer allegedly complained that "*the store* refused to exchange the product" under the Recall (emphasis added), and (2) there were "online reports" of issues with the Products several years before the Recall. Compl. ¶¶14-17. These allegations are insufficient to show any sort of class-wide problem with obtaining relief in the future. Plaintiffs have alleged at most a customer service problem with a nonparty to this litigation in the very early stages of the Recall. *See* Cugini Decl. ¶¶ 7-8. Harbor Freight has already offered Plaintiffs the requisite exchange, as well as assistance in obtaining it. *See* Cugini Decl. Exh. E. Plaintiffs have thus failed to allege any "real and immediate threat of repeated injury." Accordingly, Plaintiffs' CLRA and UCL claims for injunctive relief must be dismissed.[2]

Moreover, as part of the CAP, Harbor Freight made a reasonable effort—approved by the CPSC—to identify and notify all consumers affected by the Recall. *See* Civ. Code § 1782(c) (1)-(2); Cugini Decl. ¶¶ 6, 12. Likewise, Harbor Freight has made and will continue to make "the appropriate . . . replacement" of the Products to all consumers upon their request as required under the CLRA. Civ. Code § 1782(c)(3). Accordingly, Plaintiffs have been readily offered full injunctive relief, and a court cannot provide further injunctive relief.

### B.  Plaintiffs Lack Statutory Standing Under the UCL

To have standing under California's UCL, as amended by Proposition 64, plaintiffs must establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition. Cal. Bus. & Prof. Code § 17204; *Walker v. Geico Gen. Ins. Co*., 558 F.3d 1025, 1027 (9th Cir. 2009). "In approving Proposition 64, the California voters declared their intent 'to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact *under the standing requirements of the United States Constitution*.'" *Buckland v. Threshold Enters., Ltd*., 155 Cal. App. 4th 798, 814 (2007) (quoting

---

[2] As Plaintiffs' CLRA claim is only for injunctive relief, Count V of Plaintiffs' Complaint must be dismissed without leave to amend on this basis. Amendment to plead a damages claim under the CLRA would be futile because Plaintiffs did not comply with the CLRA's 30-day notice requirement. *See* Civ. Code § 1782(a).

Prop. 64, § 1, (e)).

To plead a UCL claim, the plaintiffs must show, consistent with Article III, that they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct. *Buckland*, 155 Cal. App. 4th at 814 (quoting *Havens Realty Corp.*, 455 U.S. at 372) (internal quotation marks omitted). Thus, Plaintiffs' failure to allege an injury-in-fact sufficient under Article III also precludes statutory standing under the UCL. *See Birdsong*, 590 F.3d at 960.

### C. Plaintiffs Lack Statutory Standing under the CLRA

Section 1780 of the CLRA provides a remedy to "[a]ny consumer who **suffers any damage** as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770." Cal. Civ. Code § 1780 (emphasis added). A plaintiff suffers "any damage" when he or she incurs "some kind of increased cost or burden," excluding the "infringement of a legal right." *Meyer v. Sprint Spectrum, L.P.*, 45 Cal. 4th 634, 643 n.3 (2009). A plaintiff bringing a CLRA claim must suffer damage above and beyond the infringement of a legal right because "[t]he mere employment of an unlawful practice [is] insufficient to authorize a CLRA suit." *Id.* Even a plaintiff seeking injunctive relief must comply with the damage requirement of section 1780. *Id.* at 644.

Even under the CLRA's relatively broad standing requirement, Plaintiffs fail to allege any damage. Plaintiffs do not allege any issue whatsoever with the product they purchased. Nor can Plaintiffs claim that they did not receive the benefit-of-the-bargain because they have clearly received notice of the free replacement.

### D. Equitable Abstention Warrants Dismissal of the Complaint

Courts frequently dismiss UCL claims under the doctrine of equitable abstention or primary jurisdiction where there exists a comprehensive administrative or regulatory scheme to redress the issue.[3] Equitable abstention is a discretionary doctrine applicable where there is a

---

[3] "Courts are not consistent in the terminology they use. Sometimes the analysis is in terms of 'primary jurisdiction' Other times, it is in terms of 'abstention.'" William L. Stern, Business & Professions Code Section 17200 Practice § 5:84 (The Rutter Group 2018).

11

| | |
|---|---|
| 1 | potential collision of policies, which a court may be asked to reconcile. *E.g.*, *Desert Healthcare* |
| 2 | *Dist. v. PacifiCare FHP, Inc.* 94 Cal. App. 4th 781, 794-95 (2001) (collecting cases) ("[B]ecause |
| 3 | the remedies available under the UCL, namely injunctions and restitution, are equitable in nature, |
| 4 | courts have the discretion to abstain from employing them."). In the context of UCL products |
| 5 | liability claims, such conflicting policies may concern the relative roles of the courts and the |
| 6 | CPSC. *Cortez v. Global Ground Support, LLC*, No. 09-4138 SC, 2009 U.S. Dist. LEXIS 110268, |
| 7 | at *11 (N.D. Ca. Nov. 25, 2009). Although courts may be capable of issuing injunctive relief in |
| 8 | products liability claims where the CPSC has already taken action, courts should abstain from |
| 9 | doing so when they would usurp the role of the CPSC, becoming a "de facto regulatory body." *Id.* |
| 10 |       Under the "primary jurisdiction" doctrine, a court may decline to adjudicate the suit in |
| 11 | deference to the administrative process. *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, |
| 12 | 391-92 (1992). Courts have applied this doctrine in the context of consumer product class actions |
| 13 | alleging violations of the California Consumer Legal Remedies Act, the Unfair Competition Law, |
| 14 | and the False Advertising Law. For example, in *Barnes v. Campbell Soup Co.*, No. C 12-05185 |
| 15 | JSW, 2013 U.S. Dist. LEXIS 118225 (N.D. Cal. July 25, 2013), the Court dismissed a class |
| 16 | action complaint regarding the labeling of bioengineered foods as "natural", pursuant to the |
| 17 | doctrine of primary jurisdiction where the FDA (1) had regulatory authority over food labeling; |
| 18 | (2) such authority led to uniformity of enforcement; and (3) the FDA had already made a |
| 19 | judgment regarding the meaning of the word "natural". *Id.* at *26-29. The Court held that |
| 20 | "[u]nder these circumstances, deference to the FDA's regulatory authority continues to remain |
| 21 | the appropriate course. . . . Otherwise, the Court risks 'usurp[ing]the FDA's interpretive |
| 22 | authority[,]' and 'undermining, through private litigation, the FDA's considered judgments.'" *Id.* |
| 23 | at *29 (internal citations omitted). Similarly, in *Figy v. Amy's Kitchen, Inc.*, 37 F. Supp. 3d 1109 |
| 24 | (N.D. Cal. 2014), the Court granted Defendant's motion to dismiss pursuant to the doctrine of |
| 25 | primary jurisdiction where the FDA had already taken action regarding the labeling the ingredient |
| 26 | "evaporated cane juice", and where the FDA's continued action would assure uniformity in |
| 27 | administration of the food-safety regulatory scheme. *Id.* at 1113-14. |
| 28 | |

Here, Harbor Freight relied upon a comprehensive regulatory scheme called the Fast Track Recall Program to quickly and efficiently protect consumers from a potential safety hazard. *See* Cugini Decl. ¶ 2.  The CPSC implemented the Fast Track Recall Program in 1998 with the stated purpose of causing businesses to quickly agree to implement a recall. The CPSC's process fulfills the policy goals of encouraging businesses to voluntarily recall products rather than implement "wait-and-see" policies that could result in further injury to consumers. Reliance on the CPSC's procedures results in uniformity and predictability in recalls of consumer products, for both consumers and manufacturers. Here, the voluntary recall procedures implemented by the CPSC provided an adequate remedy to Plaintiffs (who have suffered no injury) in the form of a brand-new replacement product.

If permitted to proceed, Plaintiffs' lawsuit would undermine the purpose of the CPSC and the procedures considered and implemented by the CPSC. Allowing an uninjured plaintiff to proceed with a putative class action premised entirely on the fact that a product was voluntarily recalled eliminates any motivation for manufacturers to ever voluntarily recall a product. Discouraging voluntary recalls because of the risk of follow-on class actions by uninured plaintiffs puts the safety of all consumers at risk. Exposure to such class actions would drive manufacturers to hiding potential safety defects rather than voluntarily reporting them and conducting a recall. This Court should decline to interfere with a functioning regulatory process, especially when doing so would, at best, merely duplicate the efforts of the CPSC, and, more likely, would undermine the entire regulatory process. Instead, this Court should dismiss Plaintiffs' claims pursuant to the doctrines of equitable abstention and primary jurisdiction.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiffs' Class Action Complaint for lack of subject matter jurisdiction.

| | | |
|---|---|---|
| DATED: October 1, 2018 | | Respectfully Submitted, |
| | | MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC |
| | By: | */s/Daniel J.Herling* |
| | | Daniel J. Herling |
| | | Samantha J. Duplantis |
| | | Attorneys for Defendant, HARBOR FREIGHT TOOLS USA, INC. |